UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARJORIE KIRK & ROBERTA TARAVELLA<br>Plaintiffs<br><br>v.<br><br>VALENTINE & KEBARTAS, INC, and<br>JANE DOE a/k/a Riley,<br>Defendants | CIVIL ACTION<br><br>COMPLAINT<br><br>JURY TRIAL<br>CLAIMED<br><br>JUNE 4, 2009 |

## COMPLAINT

### I. INTRODUCTION

1. This is a suit brought by two consumers who have been harassed and abused by Defendant collection agency and its representative. This action is for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and for intentional infliction of emotional distress.

### II. PARTIES

2. The plaintiffs, Marjorie Kirk and Roberta Taravella, are natural persons residing in Windsor Locks, Connecticut.

3. Defendant Valentine & Kebartas, Inc. ("V&K") is a Massachusetts corporation and is licensed by the Connecticut Department of Banking as a Consumer Collection Agency.

4. Jane Doe a/k/a Riley ("Riley") is an employee of V&K who works as a debt collector. Riley's identity and state of residence are not known to Plaintiffs but are ascertainable in discovery.

### III. <u>JURISDICTION</u>

5. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331 and 1337, and Fed. R. Civ. P. 18(a).

6. This Court has jurisdiction over the defendants because they engage in debt collection activities within Connecticut.

7. Venue in this Court is proper, as the Plaintiffs are residents of Connecticut and the acts complained of occurred in this state.

### IV. <u>FACTUAL ALLEGATIONS</u>

8. Plaintiffs live and reside in a home in Windsor Locks, Connecticut and are domestic partners.

9. On or around January 1, 2009, First Bank USA called Plaintiffs' residence, and a representative spoke with Plaintiff Roberta Taravella about a debt owed on an account that was in both Plaintiffs' names.

10. During that conversation, Plaintiff Roberta Taravella told the First Bank USA representative that they did not have the money to make the payment demanded by First Bank USA, and said representative told her that First Bank USA was going to charge off the debt and send it to collection.

11. On or around January 3, 2009, Defendant V&K called Plaintiffs' residence, and Plaintiff Roberta Taravella answered that call and spoke with a V&K representative named "Riley."

12. During that conversation, Riley demanded that Plaintiffs pay V&K $7,400 that very day, and when Plaintiff Roberta Taravella explained to Riley that they were unable to make that

kind of payment, Riley demanded that they at least pay $98 that same day by automatic withdrawal from her bank account, to which Plaintiff Roberta Taravella replied that it was not possible to do that since she did not have enough money in her account at the time, and that there would not be enough until tomorrow, after she made a deposit into her account.

13. Riley told Plaintiff Roberta Taravella that she had better get money into her bank account within the next hour, and Riley asked her whether she had an inheritance from any recently deceased relatives, which question prompted Plaintiff Roberta Taravella to think of her twin sister who had just recently passed away, and Plaintiff Roberta Taravella began to cry.

14. Riley then proceeded to tell Plaintiff Roberta Taravella that the reason she was crying was because there was a problem with her account and that she knew there was a problem with her account, and she said to Plaintiff Roberta Taravella "how do you like that cozy little house you live in? It is pretty cold out."

15. Plaintiff Roberta Taravella asked Riley whether she intended to take their house, and Riley said that she would do so if they do not pay within an hour, and Plaintiff Roberta Taravella asked Riley how much she wanted, and Riley responded that they had to pay $7,400 total, and they had to pay that immediately if $98 is not in their account to be paid to V&K within the next hour, and Riley said they better pay of else prepare to have a very cold winter, at which point Riley hung up.

16. Approximately three weeks later, Riley again called Plaintiffs' residence and spoke with Plaintiff Roberta Taravella, and during that call, Riley told Plaintiff Roberta Teravella that she was going to give her a chance to pay again, and Riley told her that she had to pay $7,400.

17. Plaintiff Roberta Taravella told Riley that they did not have the money to make that kind of a payment, and Riley told her to try and find the money, and Riley asked her whether she

3

had a friend or anyone who is willing to give it to her, and Riley asked whether she had an inheritance, and Riley told Plaintiff Roberta Taravella that she better figure out where she was going to get the money or else V&K was going to take her house, and that she might as well sell the furniture for money since she would not be needing it because she would not have her home much longer anyway.

18. Plaintiff Roberta Teravella and Plaintiff Marjorie Kirk believed that V&K intended to take their home if they did not meet V&K's demands, so Plaintiff Marjorie Kirk called V&K's office and spoke with Riley about it, and Riley denied ever having called Plaintiffs' home, and Riley transferred the call to an unidentified co-worker, which co-worker asked Plaintiff Marjorie Kirk whether she could get a co-signor to take out a loan to pay off the debt.

19. When Plaintiff Marjorie Kirk determined that she was unable to find a co-signor to take out a loan, she called V&K and informed it as such, and V&K responded that it was going to make a legal matter of it.

## V. COUNT ONE
### Fair Debt Collection Practices Act – V&K

20. Plaintiffs incorporate Paragraphs 1-19.

21. V&K violated the FDCPA, 15 U.S.C. § 1692e(4) by threatening or implying that it would take Plaintiffs' home when such action was not lawful and the debt collector did not intend to take such action.

22. V&K violated the FDCPA, 15 U.S.C. § 1692d by telling Plaintiff Roberta Taravella that the reason she was crying was because there was a problem with her account and that she knew there was a problem with her account, when in actuality the reason Plaintiff Roberta Taravella was crying was because she had been reminded of her recently deceased sister when Riley asked her whether she had an inheritance from any recently deceased relatives.

4

## VI. COUNT TWO
### Fair Debt Collection Practices Act - Riley

23. Plaintiffs incorporate Paragraphs 1-19.

24. Riley violated the FDCPA, 15 U.S.C. § 1692e(4), by threatening or implying that V&K would take Plaintiffs' home when such action was not lawful and the debt collector did not intend to take such action.

25. Riley violated the FDCPA, 15 U.S.C. § 1692d by telling Plaintiff Roberta Taravella that the reason she was crying was because there was a problem with her account and that she knew there was a problem with her account, when in actuality the reason Plaintiff Roberta Taravella was crying was because she had been reminded of her recently deceased sister when Riley asked her whether she had an inheritance from any recently deceased relatives.

## VII. COUNT THREE
### Intentional Infliction of Emotional Distress – V&K

26. Plaintiffs incorporate Paragraphs 1-19.

27. V&K Knew, or reasonably should have known, that its conduct would likely cause emotional distress to Plaintiffs.

28. V&K's conduct did cause Plaintiffs to suffer emotional distress, embarrassment, shame, stress, and anxiety.

29. V&K's actions were willful, wanton and malicious, in that it intended to cause Plaintiffs emotional distress to induce Plaintiffs to pay the debt, in hopes that Plaintiff would pay in order to relieve the stress.

WHEREFORE, the Plaintiffs pray for the following relief:

Monetary damages related to Plaintiff's emotional distress; actual damages, statutory damages, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k, and such other relief as this Court deems appropriate.

                             **PLAINTIFFS, MARJORIE KIRK &**
                             **ROBERTA TARAVELLA**

                             By: _____
                             Daniel S. Blinn, ct02188
                             Matthew W. Graeber, ct27545
                             dblinn@consumerlawgroup.com
                             Consumer Law Group, LLC
                             35 Cold Spring Rd. Suite 512
                             Rocky Hill, CT  06067
                             Tel. (860) 571-0408; Fax. (860) 571-7457